## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ADKISSON, SYLVIA COLLINS, TERRY PRICE, WYRINE ROGERS and KEISHAN SHY, | ) ) ) ) | |
| PLAINTIFFS, | ) ) | |
| v. | ) ) | Case No. 1:22-cv-00063 |
| THERESA A. EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, 201 South Grand Avenue East Springfield, IL 62763, | ) ) ) ) ) ) | Judge<br><br>COMPLAINT |
| and | ) ) | JURY TRIAL DEMANDED |
| GRACE B. HOU, in her official capacity as Secretary of the Illinois Department of Human Services, 100 South Grand Avenue East, Springfield, IL 62762, | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, John Adkisson, Sylvia Collins, Terry Price, Wyrine Rogers and Keishan Shy (collectively "Plaintiffs") bring this action on behalf and, except for those allegations pertaining to Plaintiffs or their attorneys, which are based upon personal knowledge, allege the following upon information and belief against the Defendants, Director of the Illinois Department of Healthcare and Family Services ("HFS") and Secretary of the Illinois Department of Human Services ("DHS").

## I.  PRELIMINARY STATEMENT

In 2016, a group of Illinois nursing home residents brought suit against the Illinois Department of Healthcare and Family Services for failure to timely process claims for payment for medical care provided to Medicaid long-term care recipients. *See Doctor's Nursing v. Norwood*, 16-cv-9837 (ND IL). Judge Elaine Bucklo entered an order confirming that the State of Illinois is required to "pay all Medicaid claims within twelve months of the date of receipt" pursuant to 42 C.F.R. § 447.45(d). Memorandum Opinion and Order, Doctor's Nursing v. Norwood, 16-cv-9837 (ND IL Sept. 1, 2017), p. 14. Rather than complying with the Court's order to bring its payment processing procedures into compliance, the State of Illinois arbitrarily and capriciously rejected or delayed the admission documents of thousands of Illinois nursing home residents, in an apparent attempt to avoid paying for care for Medicaid-approved beneficiaries. Further, the State declared that there is no method to appeal these admission rejections, in violation of the Due Process rights of thousands of Illinois nursing home residents.

## II.  JURISDICTION AND VENUE

This action arises under the Federal Medicaid Act and its implementing regulations. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(k) and 28 U.S.C. §§ 2201, 2202. Additionally, the jurisdiction of this court is invoked to secure protection to redress the deprivation under color of state law, statute, custom and/or usage of a right, privilege and/or immunity secured to the Plaintiffs by the Fourteenth Amendment to the Constitution of the United States, the Equal Protection Clause, 42 U.S.C. § 1983. Venue lies in this forum pursuant to 28 U.S.C. § 1391(e).

### III. PARTIES

1. Certain Illinois nursing home residents have been approved for Medicaid long-term care benefits, but their Medical Electronic Data Interchange ("MEDI") Admissions or their Form HFS 1156 Admissions have been arbitrarily and capriciously rejected by DHS and/or HFS.

2. John Adkisson is an Illinois resident who has been approved for Medicaid benefits and is a resident of an Illinois nursing home.

3. Sylvia Collins is an Illinois resident who has been approved for Medicaid benefits and is a resident of an Illinois nursing home.

4. Terry Price is an Illinois resident who has been approved for Medicaid benefits and is a resident of an Illinois nursing home.

5. Wyrine Rogers is an Illinois resident who has been approved for Medicaid benefits and is a resident of an Illinois nursing home.

6. Keishan Shy is an Illinois resident who has been approved for Medicaid benefits and is a resident of an Illinois nursing home.

7. Certain Illinois nursing home residents have been approved for Medicaid benefits, but their Long-term Care Applications have been arbitrarily and capriciously rejected by DHS and/or HFS.

8. The Illinois Department of Healthcare and Family Services ("HFS" or "Defendant") is an Illinois state agency that provides Medicaid services to enrollees in Illinois. HFS is the state agency responsible for administering Medicaid in the State of Illinois.

9. Theresa A. Eagleson, is the Director of HFS ("Eagleson" or "Defendant"), and at all times material to this Complaint acted under color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only.

10.     Defendant HFS assigns to the Illinois Department of Human Services ("DHS" or "Defendant") certain tasks in the processing of Medicaid Long-term Care Applications and Admissions.

11.     Grace B. Hou is the Secretary of DHS ("Hou" or "Defendant"), and at all times material to this Complaint acted under color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only.

## IV.  STATEMENT OF FACTS

12.     The named Plaintiffs are all Illinois long-term care residents, who were provided twenty-four-hour skilled nursing care and supportive living services, and who are insolvent and entitled to receive Medicaid benefits pursuant to federal and state law.

13.     The Plaintiffs suffer from severe medical conditions which require twenty-four hour medical care and which substantially interfere with one or more of their life processes.

14.     The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

15.     As a condition of receiving federal funds, HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8) and implementing regulations.

16.     HFS assigns certain tasks associated with administering the Medicaid program in the state of Illinois to DHS.

Overview of Medicaid Application, Long-term Care Application, and Medical Electronic Data Interchange System ("MEDI") Admission Processes

17.     In order to receive Medicaid benefits, indigent, severely ill, and often elderly Illinois residents must submit an Application for Benefits Enrollment (ABE).

18.     Federal law requires that the state agency make an eligibility determination on a Medicaid application within forty-five days.  *See* 42 C.F.R. § 435.912.

4

19.     Federal law requires the state agency to issue a determination on an individual's Medicaid application and requires that every applicant be timely afforded such notice and a right to appeal such decision.

20.     Defendants then separately require nursing home residents to be approved for Long-term Care benefits prior to the Defendants providing for the residents' long-term care.

21.     Nursing Home Residents submit a MEDI Admission Packet or a form HFS 1156 to begin the approval process for Long-term Care benefits.

22.     The process of entering an admission packet into the MEDI system generates a unique Transaction Audit Number ("TAN" number) for the resident.

23.     The TAN attaches to a specific MEDI Admission date.

24.     Defendants also require Form HFS 3654 Additional Financial Information for Long-term Care Applications to approve a nursing home resident for Long-term Care in Illinois.

25.     Much of the information collected on HFS 3654 is duplicative of the financial information provided in an initial Medicaid application and already within the Defendants' control.

26.     If the Agency determines that it does not have sufficient financial information from the original ABE application or from the HFS 3654, the Agency sends additional requests for financial information.

27.     Often, rather than sending an official form, an agency representative will send an email to a nursing facility or an Authorized Representative requesting a document or documents.

28.     No log is kept tracking informal requests for information.

29.     When a facility, Authorized Representative, or resident emails or faxes back the requested information, no log is kept of incoming resident financial data.

30.     If a resident's file is transferred to another agency employee, the second employee has no log to review to locate the requested data and has no access to the initial employee's email.

31.     Many Long-term Care applications are rejected on the ground that the applicant failed to cooperate by providing requested financial information even though the data was provided.

32.     Under such circumstances, Defendants require the applicant/resident to submit a new MEDI admission and, therefore, when the resident's long-term care benefits are finally approved, the benefits begin on the later date.

33.     If a nursing home resident has been approved for Medicaid services prior to entering the nursing home, the Medicaid recipient resident has not always applied for or been approved for Long-term Care Benefits.

34.     If a nursing home resident has been approved for Medicaid long-term care services prior to entering the nursing home, the Medicaid recipient resident must still submit a MEDI Admission or form 1156.

35.     Each Long-term Care applicant must also obtain a "needs screening" ("OBRA screening") to determine if institutional placement or home and community-based services are appropriate and allowable. Individuals must meet the level of care functional eligibility need for institutional or community-based services.

36.     The Plaintiffs have had an OBRA screening which established that institutional placement is appropriate and allowable or is exempt under the DDD Pre-Admission Screenings Manual 120.00.

37.     Defendants often reject the admissions of nursing home residents whose MEDI admissions do not include the OBRA screening even when the screening was timely completed.

38.     Defendants do not allow the MEDI admission to be amended to include the OBRA screening information when it is available, but instead require that a new MEDI admission be entered, delaying the date of the applicant's benefits.

39.     Defendants require financial information with Long-term Care MEDI admissions and/or Long-term Care Facility Notifications.

40.     Defendants' Form HFS 3654 is titled "Additional Financial Information for Long-term Care Applicants."

41.     Defendants review the Admit Packs for financial and medical need for long-term care.

42.     Defendants often seek additional financial information from nursing home residents after submission of the MEDI Admission.

43.     Defendants reject nursing home residents' MEDI admissions for not providing additional financial information.

44.     Defendants treat nursing home residents' MEDI Admissions Packet or the Long-term Care Facility Notification as an application for Medicaid Long-term Care benefits, separate from the original ABE Medicaid application.

45.     However, Defendants do not provide the nursing home residents notice of denial of Long-term Care benefits.

46.     When an applicant is approved for Long-term Care, the applicant and facility are sent form HFS 458LTC Notice of Decision on Application for Medical Assistance MANG Nursing Home/Supportive Living Facility and form HFS 2500 Nursing Home/Supportive Living Facility Calculation.

47.     Both forms HFS 458LTC and HFS 2500 inform the resident/applicant of his/her right to appeal within 60 days if the resident/applicant does not agree with the decision.

48.     The Form HFS 2500 Nursing Home/Supportive Living Facility Calculation instructs beneficiaries to contact "The Admit Team" with questions about the calculation.

49.     Defendants do not provide nursing home residents an opportunity to appeal a denial of Long-term Care Benefits.

50.     Defendants often do not make determinations on nursing home residents' MEDI admission within 45 days.

51.     Defendants fail to provide nursing home residents Due Process with respect to their Long-term Care applications by failing to provide a notice of denial and failing to provide the opportunity to appeal a denied application.

52.     Defendants refuse to backdate the nursing home resident's benefits based upon the original MEDI admission date.

53.     Defendants have rejected nursing home residents' MEDI admissions where the MEDI admission has the resident's name spelled differently than the Agency spells the resident's name.

54.     Defendants have rejected nursing home residents' MEDI admissions where the MEDI admission has a transposition of digits in the ICD code.

55.     Defendants have rejected nursing home residents' MEDI admissions without informing either the nursing home resident or the facility of the reason for the rejection.

56.     Where a Long-term Care applicant's MEDI admission is rejected for allegedly failing to provide financial documentation or lack of OBRA screening, no notice of denial is sent to the applicant.

57.     Where a Long-term Care applicant's MEDI admission is rejected for allegedly failing to provide financial documentation or lack of OBRA screening, no notice of change of benefits is sent to the applicant.

58.     Subsequent to the passing of recent legislation, an Admit Rejection Letter, form IL 444-1010, is to be sent to a facility when an admission is rejected.

59.     No notice of rejection or form IL 444-1010 is sent to the applicant/beneficiary.

60.     The Admit Rejection Letter, form IL 444-1010, explicitly states in bold type, "This is merely a notification and does not provide any rights to the facility nor impose any obligations on the State of Illinois. Further, this is not a decision on an individual's Medicaid eligibility and, therefore, is not appealable through the Department of Human Services Bureau of Hearings."

61.     Status Code 12 indicates an admission has been rejected by the "DHS MFO LTC Office."

62.     Retroactive Medicaid eligibility for the three months prior to a Medicaid application is mandated by federal law.

63.     Skilled nursing home care is one of the medical expenses eligible for three months of retroactive Medicaid coverage.

64.     On December 8, 2014, Defendants issued a provider notice informing facilities that nursing home residents' MEDI admissions must be submitted within 15 days of receipt of form HFS 2536 Interagency Certification of Screening Results or receipt of the Long-term Care approval notice form HFS 458LTC ("Defendants' 15-day rule").

65.     Defendants' 15-day rule is not in keeping with federal regulations and was not submitted to or approved by the Centers for Medicare and Medicaid Services (CMS) as a State Plan Amendment.

9

66.    On June 13, 2018, Defendants issued a provider notice informing facilities that nursing home residents' MEDI admissions must be submitted within 45 days of the latter of the date of receipt of either form HFS 2536 or HFS 3864 or the date of admission entered on the MEDI admission ("Defendants' 45-day rule").

67.    Defendants' 45-day rule is not in keeping with federal regulations and was not submitted to or approved by the CMS as a State Plan Amendment.

68.    On December 23, 2021, Defendants issued a provider notice informing facilities that, effective January 1, 2022, nursing home residents' MEDI admissions must be submitted within 120 days of the latter of the date of receipt of either form HFS 2536 or HFS 3864 or the date of admission entered on the MEDI admission ("Defendants' 120-day rule").

69.    Defendants' 120-day rule is not in keeping with federal regulations and was not submitted to or approved by the CMS as a State Plan Amendment.

70.    Federal regulations provide a procedure for CMS to approve or disapprove any material changes in state law, organization or policy respecting Medicaid.

71.    42 C.F.R. § 430.12(c)(1)(ii) requires a state participating in Medicaid to first file a plan amendment with CMS whenever the state enacts a **"[m]aterial change[] in State law, organization, or policy"** respecting Medicaid (emphasis added).

72.    The U.S. Department of Health & Human Services (HHS), through CMS, reviews the plan and determines whether it complies with statutory and regulatory requirements. *See* 42 U.S.C. § 1316(a)(1) and (b).

73.    The United States Supreme Court has ruled that CMS has the final say in any State Plan and State Plan Amendments. *Douglas v. Independent Living Center of Southern California,*

10

*Inc.*, 565 U.S. 606, 610, 611 (2012); *Wilder v. Virginia Hospital Assn.*, 496 U.S. 498, 502 (1990). 42 U.S.C. §§ 1316(a)(1), (b), 1396a(a), (b); 42 CFR § 430.10 et seq. (2010).

74.     There is no authority that the CMS approved the use of either or both the Defendants' 15-day rule and/or the Defendants'45-day rule.

75.     Defendants' 45-day rule does not account for Defendants' failure to make a determination on Defendants' applications within 45 days.

76.     Defendants have rejected the MEDI admissions of nursing home residents admitted to their facilities between December 8, 2014 and December 31,2017 if the agency determined the MEDI admission was not submitted within the 15-day deadline.

77.     Defendants have rejected the MEDI admissions of nursing home residents admitted to their facilities after January 1, 2018 if the agency determined the MEDI admission was not submitted within the 45-day deadline.

78.     Despite requiring nursing home residents to enter new MEDI admissions for an alleged flaw, Defendants then reject subsequent MEDI admissions because the new MEDI date does not match the original facility admission date.

79.     On September 1, 2017, Judge Elaine Bucklo entered a Memorandum Opinion and granting a motion for a preliminary injunction requiring Defendants to "determine eligibility for certain patient plaintiffs' Medicaid or long-term care applications that have been pending for more than ninety days" and to "bring HFS's claims processing procedures into compliance with 42 U.S.C. § 1396a (a)(8)'s reasonable promptness requirement and the timely payment provisions of 42 C.F.R § 447.45."

80.     After entry of Judge Bucklo's Order, the Defendants began delaying the processing of MEDI admission packets of Illinois nursing home residents.

81.     After entry of Judge Bucklo's Order, the Defendants arbitrarily and capriciously rejected hundreds of MEDI admission documents without explanation to the resident or facility and without notice to the resident.

82.     The Defendants have failed to provide a system that ensures medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

83.     In light of the Defendants' failure to comply with federal and state Medicaid laws, the Plaintiffs have been unable to pay for their room, board, care and services at their facilities during their period of Medicaid ineligibility as stated above.

84.     Such inaction by the Defendants places the Plaintiffs at risk of being discharged from their facility, and jeopardizes their health, safety and well-being.

## The Named Resident Plaintiffs

### JOHN ADKISSON

85.     John Adkisson was admitted to Roseville Rehabilitation and Healthcare ("Roseville") on or about June 22, 2012.

86.     Due to his numerous medical conditions, Mr. Adkisson receives needed 24-hour medical care at Roseville for his health, welfare and survival.

87.     Mr. Adkisson's Interagency Certification of Screening Results was completed and established medical necessity for nursing home care.

88.     Mr. Adkisson's Form HFS 2378H Mail-In Application for Medical Benefits was submitted.

89.     The State sent a form IL 444-0267 Verification Checklist requesting form HFS 3654 Additional Financial Information for Long-term Care Applicants, proof of any additional income, and proof of monthly insurance premiums.

90.     The requested documents were provided to the State.

91.     Mr. Adkisson's application was approved.

92.     Despite being approved for Long-term Care benefits, Mr. Adkisson's MEDI Admission was rejected by Defendants without providing a reason for the rejection.

93.     Moreover, Defendants refuse to process an admission for Mr. Adkisson from the date of his Long-term Care benefit approval.

94.     Mr. Adkisson has been deprived of the opportunity to appeal the rejection of his Admission.

95.     Mr. Adkisson has not received notice of a change in his Long-term Care benefits.

96.     Defendants are wrongfully withholding Mr. Adkisson's benefits without explanation, adequate notice, or due process.

97.     Mr. Adkisson has been billed by his facility for in excess of $7,961.00 for his uncovered long-term care.  Mr. Adkisson's outstanding balance is a direct result of Defendants' rejection of the MEDI Admission and the Defendants' refusal to process an admission for Mr. Adkisson from the date of his Long-term Care benefit approval.

98.     Mr. Adkisson is subject to collections referrals and/or legal actions for his outstanding balance.

99.     As a result of the non-payment for his 24-hour care, Mr. Adkisson's facility has issued a Notice of Involuntary Transfer or Discharge.

100.    As a direct result of the Defendants' failure to timely process his Medicaid Long-term Care Admission, Mr. Adkisson has failed to receive nursing facility services provided by Defendants, to which he is entitled pursuant to federal law.

**SYLVIA COLLINS**

101.    Sylvia Collins was admitted to Quincy Healthcare & Senior Living ("Quincy") on or about June 4, 2021.

102.    Due to her numerous medical conditions, Ms. Collins receives needed 24-hour medical care at Quincy for her health, welfare and survival.

103.    Ms. Collins' Interagency Certification of Screening Results was completed and established medical necessity for nursing home care.

104.    Ms. Collins' Form HFS 2378H Mail-In Application for Medical Benefits was submitted.

105.    The State sent a form IL 444-0267 Verification Checklist requesting form HFS 3654 Additional Financial Information for Long-term Care Applicants, proof of any additional income, and proof of monthly insurance premiums.

106.    The requested documents were provided to the State.

107.    Ms. Collins' application was approved.

108.    Despite being approved for Long-term Care benefits, Ms. Collins' MEDI Admission was rejected by Defendants without providing a reason for the rejection.  As of the date of filing this Complaint, Ms. Collins' MEDI admission still has not been approved.

109.    Moreover, Defendants refuse to process an admission for Ms. Collins from the date of her Long-term Care benefit approval.

14

110. Ms. Collins has been deprived of the opportunity to appeal the rejection of her Admission.

111. Ms. Collins has not received notice of a change in her Long-term Care benefits.

112. Defendants are wrongfully withholding Ms. Collins' benefits without explanation, adequate notice, or due process.

113. Ms. Collins has been billed by her facility for in excess of $13,976.00 for her uncovered long-term care through September 2021. On October 1, 2021, the facility changed ownerships and the balance continues to accrue. Ms. Collins' outstanding balance is a direct result of Defendants' rejection of the MEDI Admission and the Defendants' refusal to process an admission for Ms. Collins from the date of her Long-term Care benefit approval.

114. Ms. Collins is subject to collections referrals and/or legal actions for her outstanding balance.

115. As a result of the non-payment for her 24-hour care, Ms. Collins' facility has issued a Notice of Involuntary Transfer or Discharge.

116. As a direct result of the Defendants' failure to timely process her Medicaid Long-term Care Admission, Ms. Collins has failed to receive nursing facility services provided by Defendants, to which she is entitled pursuant to federal law.

**TERRY PRICE**

117. Terry Price was admitted to Quincy on or about July 1, 2021.

118. Due to his numerous medical conditions, Mr. Price receives needed 24-hour medical care at Quincy for his health, welfare and survival.

119. Mr. Price's Interagency Certification of Screening Results was completed and established medical necessity for nursing home care.

120.    Mr. Price's Form HFS 2378H Mail-In Application for Medical Benefits was submitted.  A TAN was submitted on July 14, 2021 for payment beginning July 1, 2021.

121.    The State sent a form IL 444-0267 Verification Checklist requesting form HFS 3654 Additional Financial Information for Long-term Care Applicants, proof of any additional income, and proof of monthly insurance premiums.

122.    The requested documents were provided to the State.

123.    Mr. Price's application was approved on September 9, 2021.

124.    Despite being approved for Long-term Care benefits, Mr. Price's MEDI Admission was rejected by Defendants without providing a reason for the rejection.  As of the date of filing this Complaint, Mr. Price's MEDI admission still has not been approved.

125.    Moreover, Defendants refuse to process an admission for Mr. Price from the date of his Long-term Care benefit approval.

126.    Mr. Price has been deprived of the opportunity to appeal the rejection of his Admission.

127.    Mr. Price has not received notice of a change in his Long-term Care benefits.

128.    Defendants are wrongfully withholding Mr. Price's benefits without explanation, adequate notice, or due process.

129.    Mr. Price has been billed by his facility for in excess of $15,314.00 for his uncovered long-term care.  On October 1, 2021, the facility changed ownerships and the balance continues to accrue.   Mr. Price's outstanding balance is a direct result of Defendants' rejection of the MEDI Admission and the Defendants' refusal to process an admission for Mr. Price from the date of his Long-term Care benefit approval.

16

130.    Mr. Price is subject to collections referrals and/or legal actions for his outstanding balance.

131.    As a result of the non-payment for his 24-hour care, Mr. Price's facility has issued a Notice of Involuntary Transfer or Discharge.

132.    As a direct result of the Defendants' failure to timely process his Medicaid Long-term Care Admission, Mr. Price has failed to receive nursing facility services provided by Defendants, to which he is entitled pursuant to federal law.

**WYRINE ROGERS**

133.    Wyrine Rogers was admitted to Decatur Manor Healthcare on or about March 11, 2019.

134.    Due to her numerous medical conditions, Ms. Rogers received needed 24-hour medical care at Decatur Manor Healthcare for her health, welfare and survival.

135.    Ms. Rogers' Interagency Certification of Screening Results was completed and established medical necessity for nursing home care.

136.    Ms. Rogers' Form HFS 2378H Mail-In Application for Medical Benefits was submitted on March 11, 2019.

137.    The State sent a form IL 444-0267 Verification Checklist requesting form HFS 3654 Additional Financial Information for Long-term Care Applicants, proof of any additional income, and proof of monthly insurance premiums.

138.    The requested documents were provided to the State.

139.    Ms. Rogers' application was approved.

140.    Despite being approved for Long-term Care benefits, Ms. Rogers' MEDI Admission was rejected by Defendants without providing a reason for the rejection.

141.     Moreover, Defendants refuse to process an admission for Ms. Rogers from the date of her Long-term Care benefit approval.

142.     Ms. Rogers has been deprived of the opportunity to appeal the rejection of her Admission.

143.     Ms. Rogers has not received notice of a change in her Long-term Care benefits.

144.     Defendants are wrongfully withholding Ms. Rogers' benefits without explanation, adequate notice, or due process.

145.     Ms. Rogers been billed by her facility for in excess of $2,508.00 for her uncovered long-term care.  Ms. Rogers' outstanding balance is a direct result of Defendants' rejection of the MEDI Admission and the Defendants' refusal to process an admission for Ms. Rogers from the date of her Long-term Care benefit approval.

146.     Ms. Rogers is subject to collections referrals and/or legal actions for her outstanding balances.

147.     As a result of the non-payment for his 24-hour care, Ms. Rogers' facility has issued a Notice of Involuntary Transfer or Discharge.

148.     As a direct result of the Defendants' failure to timely process her Medicaid Long-term Care Admission, Ms. Rogers has failed to receive nursing facility services provided by Defendants, to which she is entitled pursuant to federal law.

**KEISHAN SHY**

149.     Keishan Shy was admitted to Generations at Elmwood Park on or about July 3, 2018.

150.     Due to his numerous medical conditions, Mr. Shy receives needed 24-hour medical care at Generations at Elmwood Park for his health, welfare and survival.

151.    Mr. Shy's Interagency Certification of Screening Results was completed and established medical necessity for nursing home care.

152.    Mr. Shy's Form HFS 2378H Mail-In Application for Medical Benefits was submitted on or about September 5, 2018.

153.    The State sent a form IL 444-0267 Verification Checklist requesting form HFS 3654 Additional Financial Information for Long-term Care Applicants, proof of any additional income, and proof of monthly insurance premiums.

154.    The requested documents were provided to the State.

155.    Mr. Shy's application was approved.

156.    Despite being approved for Long-term Care benefits, Mr. Shy's MEDI Admission has been rejected by Defendants without providing a reason for the rejection.

157.    Moreover, Defendants refuse to process an admission for Mr. Shy from the date of his Long-term Care benefit approval.

158.    Mr. Shy has been deprived of the opportunity to appeal the rejection of his Admission.

159.    Mr. Shy has not received notice of a change in his Long-term Care benefits.

160.    Defendants are wrongfully withholding Mr. Shy's benefits without explanation, adequate notice, or due process.

161.    Mr. Shy has been billed by his facility for in or around $18,419.00 for his uncovered long-term care.  Mr. Shy's outstanding balance is a direct result of Defendants' rejection of the MEDI Admission and the Defendants' refusal to process an admission for Mr. Shy from the date of his Long-term Care benefit approval.

162.     Mr. Shy is subject to collections referrals and/or legal actions for his outstanding balance.

163.     As a result of the non-payment for his 24-hour care, Mr. Shy's facility has issued a Notice of Involuntary Transfer or Discharge.

164.     As a direct result of the Defendants' failure to timely process his Medicaid Long-term Care Admission, Mr. Shy has failed to receive nursing facility services provided by Defendants, to which he is entitled pursuant to federal law.

165.     The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

166.     As a condition of receiving federal funds, the Defendant is required to administer the Medicaid program in the State of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8) and implementing regulations.

167.     The Defendants have failed or refused to promptly process the MEDI Admissions/Medicaid Long-term Care Applications submitted by or on behalf of Plaintiffs.

168.     42 C.F.R. § 447.45(d) states as follows:

*Timely processing of claims.*

(1) The Medicaid agency must require providers to submit all claims no later than 12 months from the date of service

......

(4) The agency must pay all other claims within 12 months of the date of receipt…[exceptions are excluded as are not applicable.]

42  C.F.R. § 447.45(d).

169.     The Defendants have refused to process Long-term Care Admissions so Plaintiffs and their facilities can perform the tasks required to make monthly claims for payment.

170.    The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to Plaintiffs, who meet the financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

171.    Each of the named Plaintiffs has one or more physical or mental impairments that substantially limit one or more major life activity and, thus, they are "individuals with a disability."

172.    By failing to process Long-term Care Applications and Admissions for persons eligible for Medicaid benefits, the Defendants have failed to comply with federal law.

173.    The burden placed on the Defendants, should the Court grant the relief requested in this action, is that Defendants will be required to comply with federal Medicaid laws and provide for nursing facility services to Plaintiffs. The Defendants stand to suffer diminutive, if any, burden by the timely

### V.  AUTHORITY FOR DECLARATORY JUDGMENT RELIEF

174.    Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff seeks a declaration by this Court.

175.    It is well settled that the district court's exercise of discretion in a declaratory judgment action should be informed by a number of prudential factors, including: (1) considerations of practicality and efficient judicial administration; (2) the functions and limitations of the federal judicial power; (3) traditional principles of equity, comity, and federalism; (4) Eleventh Amendment and other constitutional concerns; and (5) the public interest. *Smith & Usaha,* at 116, *citing Wilton v. Seven Falls Company,* 515 U.S. 288 (1995); *Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Rickover*, 369 U.S. 111 at 112-13; *Public Service Commission of Utah v. Wycoff Company,* 344 U.S. 237, 243-47 (1952). Perhaps the most important factors are whether

a declaratory judgment will serve a useful purpose and resolve the controversy between the parties. *Smith & Usaha, supra not*e 2, at 116; *Wilton*, 515 U.S. at 288; *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Rickover*, 369 U.S. 111 at 112-13*G*; *Wycoff*, 344 U.S. at 244.

176.   The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

177.   As a condition of receiving federal funds, HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8) and implementing regulations.

178.   Federal law requires the Defendants to issue a determination on an individual's Medicaid application and requires that every applicant be timely afforded such notice and a right to appeal such decision.

179.   Federal law requires that the Defendant make an eligibility determination on a Medicaid application within forty-five days. *See* 42 C.F.R. § 435.912.

180.   The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

## VI.  CAUSES OF ACTION

### COUNT I – VIOLATION OF DUE PROCESS
### (42 U.S.C. § 1983)

181.   The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

182.   Medicaid applicants have a Constitutionally protected property interest in their applications.

183. Medicaid Beneficiaries have a Constitutionally protected property interest in their benefits.

184. Defendants deprived Plaintiffs of their property interests to which Plaintiffs had a legitimate claim of entitlement by failing to provide notice of denial of benefits and failing to provide an opportunity to appeal denied benefits.

185. Defendants deprived Plaintiffs of their property interests to which Plaintiffs had a legitimate claim of entitlement by failing to provide notice of rejection of the admission pack and failing to provide an opportunity to appeal a rejected admission pack.

186. Moreover, Defendants' refusal to process the admission packets of nursing home residents approved for Long-term Care benefits constitutes a taking of their property without due process as the beneficiaries are not notified of a change in their benefits eligibility.

187. The procedures implemented by Defendants to deprive Plaintiffs of their property interests are and were constitutionally insufficient.

188. To comply with the Due Process guarantees under the United States Constitution, the Defendants must provide the Plaintiffs with a meaningful notice that apprises them of the reasons for a denial, the authority for the denial, and an opportunity to appeal such denial.

189. Plaintiffs are entitled to a hearing when such benefits are denied to them for the reasons enumerated under the Federal Medicaid act.

190. The above acts were committed under color of state law by the Defendants. Said acts were committed by the Defendants by and through representatives of the Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants.

191. The Defendants acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of their rights, privileges, or immunities secured by the Constitution

and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983.

192.    As a consequence of the Defendants' actions as described herein, the Plaintiffs have suffered damages including risk of being dismissed from their residences, mental anguish and other damages.

## COUNT II - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE AND NURSING FACILITY SERVICES MANDATE

193.    Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

194.    In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendants, while acting under the color of law, has failed to provide Plaintiffs with nursing facility services necessary for their health and welfare.

195.    The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT III - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

196.    Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

197.    The named Plaintiffs are all Medicaid-eligible individuals who require nursing facility services and reside in Illinois.

198.    The Defendants are engaged in the repeated, ongoing failure to arrange and provide medical assistance and nursing facility services despite the fact that medical assistance and nursing facility services are medically necessary for Plaintiffs.

199.    In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide services to the Plaintiffs with "reasonable promptness."

200.    Furthermore, the Defendants are required to administer the Medicaid program in compliance with 42 C.F.R. § 435.930 (requiring applicants be afforded Medicaid benefits without any delay).

201.    Defendants' failure to process Plaintiff's admissions packets within 45 days is an unreasonable delay where Plaintiffs have been approved for Long-term Care benefits and the processing of the admission packet is a ministerial task.

202.    Defendants' unreasonable delay creates extensive complications particularly where the Defendants take several months to reject an Admission and then require that a new MEDI Admission be submitted but refuse to backdate the TAN date.

203.    To make an inquiry as to Admission/TAN status, the inquiry is to be addressed to the appropriate DHS MFO office.

204.    When an Authorized Representative inquires of Defendants as to the status of an Admission, Defendants send a form email stating "Due to the number of inquiry lists received a response may be expected in 4 to 6 weeks. Of course, this time frame is an estimate only and the response time could be longer depending on the volume of inquiries we receive at any given time. Lists are addressed this way in order to give all facilities in the 65 counties we serve equal access to information. Your list will be addressed in the order received. Thank you for your patience."

205.    Defendants' failure to process Plaintiffs' MEDI Admissions as a Long-term Care application is an unreasonable delay as the Medicaid Act requires determination on Medicaid applications within 45 days.

206.    The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

## VII. REQUESTS FOR RELIEF

Plaintiffs respectfully request this Court:

A.  Issue a Declaratory Judgment in favor of the Plaintiffs, requiring the Defendants to adhere to the requirements of the Medicaid Act;

B.    Issue permanent injunctive relief requiring the Defendants within ninety days to determine eligibility for all Illinois nursing home residents' Long-Term Care Medicaid applications that have been pending for more than forty-five days and issue a Notice of Decision;

C.    Issue permanent injunctive relief requiring the Defendants to bring their Long-Term Care Medicaid application processing procedures into compliance with 42 U.S.C. § 1396a(a)(8)'s reasonable promptness requirement;

D.    Issue permanent injunctive relief requiring the Defendants within forty-five days to process all MEDI Admissions which have been pending for more than forty-five days;

E.    Issue permanent injunctive relief requiring the Defendants to bring their Long-Term Care admission packet processing procedures into compliance with 42 U.S.C. § 1396a(a)(8)'s reasonable promptness requirement;

F.    Issue permanent injunctive relief requiring the Defendants to prospectively process all MEDI Admissions within forty-five days;

G.    Issue permanent injunctive relief requiring the Defendants to provide to all Illinois Long-term Care applicants and beneficiaries notice of denial of their Long-Term Care application and notice of rejection of their admission packets;

H        Issue permanent injunctive relief requiring the Defendants to provide to all Illinois Long-term Care applicants and beneficiaries the opportunity to appeal denied Long-Term Care applications and rejected admission packets in accordance with Due Process;

I.        Declare unlawful the Defendants' failure to arrange for medical assistance and nursing facility services to the Plaintiffs;

J.        Award such other relief as the Court deems just and appropriate.


Respectfully submitted,

/s/ Amy Baughman
sb2, inc
1426 N. 3rd Street, Suite 120
Harrisburg, PA 17102
Telephone: (843) 359-1095
Facsimile: (717) 909-5925
abaughman@sb2inc.com
*Attorney for Plaintiff*