IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN ADKISSON, WYRINE ROGERS, and KEISHAN SHY, Individually and as the representatives of a class of similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> THERESA A. EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, 201 South Grand Avenue East Springfield, IL 62763, <br><br> and <br><br> GRACE B. HOU, in her official capacity as Secretary of the Illinois Department of Human Services, 100 South Grand Avenue East, Springfield, IL 62762, <br><br> Defendants. | Case No. 22 C 63 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The underlying facts of this matter concern the Medicaid long-term care application, approval, and payment disbursement processes for residents in Illinois nursing homes. These processes bear a brief explanation.

The Illinois Department of Healthcare and Family Services ("HFS") and the Illinois Department of Human Services ("DHS") (collectively, the "Defendants") are the state agencies that

administer federal Medicaid programs in Illinois. To receive long-term care benefits at a nursing home, the resident is required to submit a two-part application process. First a resident must submit a general application to receive Medicaid benefits, which is processed by HFS and results in approval or denial. Second, and separate from the general-eligibility determination is a long-term care request, the approval for which results in nursing home care coverage. In addition to the Medicaid and long-term care application process for individual patients, there is a separate application for nursing homes – which are responsible for providing long-term care services – to receive financial reimbursements from HFS and DHS. The parties refer to this separate application process as the MEDI (which stands for "Medical Electronic Data Interchange") system. Specifically, nursing homes must submit what is called a MEDI "admission packet" to HFS for every resident who receives long-term care benefits. This is required regardless of whether a resident was approved for Medicaid long-term care services before or after entering the nursing home; either way, when the resident enters a nursing home and begins to receive long-term care, a MEDI admission packet must be submitted for each resident.

If the MEDI admission is approved, then the nursing home presumably receives reimbursements for any long-term care services

provided by the nursing home beginning on the date that the beneficiary was "admitted" into the facility. But Plaintiffs allege the MEDI admissions are frequently denied for a variety of reasons. When these denials happen, the individual applicants are not given notice or an opportunity to appeal their MEDI admission denial. After a rejection, a new MEDI admission packet with the correct information must be submitted for the resident, and if the later application is approved, the reimbursements begin on the later date. Plaintiffs allege that these MEDI rejections, coupled with the lack of notice and opportunity to be heard, functionally allow the Defendants "to avoid paying for care for Medicaid-approved beneficiaries." (Dkt. No. 5. ("Am. Compl.") at 2.)

The original five Named Plaintiffs ("Plaintiffs") were Illinois nursing-home residents and had been approved for general Medicaid, but their MEDI packets were denied. (*Id.* ¶¶ 92, 108, 124, 140.) Plaintiffs filed their original Complaint alleging violations of due process under 28 U.S.C. § 1983 and claims under the several provisions of Federal Medicaid Act, 42 U.S.C. § 1396. Plaintiffs sought declaratory and injunctive relief, and included Theresa Eagleson and Grace Hou, the Director of HFS and Secretary of DHS, respectively, as named Defendants. Plaintiffs alleged that HFS and DHS, by failing to give residents notice of or opportunity to appeal such denial, violated the residents' due

process rights as well as certain provisions of the Medicaid Act. As a result of the benefits denial, Plaintiffs were allegedly billed personally for the costs of their care by their nursing homes. They also allegedly became subject to collections referrals or other legal actions for the uncovered long-term care that Defendants did not reimburse the nursing homes, despite Plaintiffs' eligibility for such care and despite having Medicaid approval.

Plaintiffs then filed an Amended Class Action Complaint on February 4, 2022, indicating their intent to bring the claims on behalf of similarly situated persons. (Dkt. No. 5.) During the pendency of the litigation, Defendants settled the claims with one Plaintiff and one other Plaintiff died, leaving three Plaintiffs left. The next year on May 1, 2023, Plaintiffs filed a Motion for Class Certification. [Dkt. No. 31.] Although the timing of when the remaining three Plaintiffs' claims were mooted is disputed, that they were at some point mooted by Defendants paying Plaintiffs' outstanding long-term care balances is not in dispute. On July 26, 2023, Intervenors Salvatore Arcidiacono, and William Brown (the "Substitute Plaintiffs") filed a Motion to Intervene and substitute for the Plaintiffs as class representatives. (Dkt. No. 37.) These Intervenors seek the same relief as the Named Plaintiffs.

As Plaintiffs highlight in their briefs, this is the second suit filed to adjudicate the legality and constitutionality of Defendants' denial of the MEDI submissions on the basis of alleged non-compliance. In *Daly v. Eagleson,* thirteen plaintiffs brought claims that were virtually identical to those asserted in the current suit. 2021 WL 4439428 (N.D. Ill. Sept. 27, 2021) (Chang, J.) This previous case was ultimately dismissed because Defendants mooted out some of the plaintiffs by paying their outstanding invoices, while the remainder died pending resolution of their claims. *Id.*

Before the Court is Plaintiffs' Motion for Class Certification [Dkt. No. 31], Unnamed Putative Class Members' Motion to Intervene as Named Party Plaintiffs [Dkt. No. 37], and Motion to Strike Defendants' Affidavit [Dkt. No. 42]. For the reasons stated herein, Plaintiff's Motion to Strike is denied, and the case is dismissed as Plaintiffs' claims became moot in November 2022. Plaintiffs' Motion for Class Certification and Unnamed Putative Class Members' Motion to Intervene are therefore dismissed as moot.

## II. ANALYSIS

On July 26, 2023, Intervenors Salvatore Arcidiacono and William Brown filed their Motion to Intervene as party-plaintiffs under Federal Rule of Civil Procedure 24(b). Rule 24(b) authorizes

a Court to permit anyone to intervene, on timely motion, who "has a claim or defense that shares with the main action a common question of law or fact." Both parties agree that Defendants paid the outstanding claims of the remaining three Plaintiffs thereby mooting their claims. Intervenors moved to intervene to replace these Plaintiffs as representatives of the putative class.

*Primax Recoveries, Inc. v. Sevilla* governs whether and the extent to which the claims of the unnamed members of the putative class are moot when the named plaintiffs' claims become moot. 324 F.3d 544 (7th Cir. 2003). The Seventh Circuit in *Primax* held that the mooting of the named plaintiffs' claims in a putative class action does not moot the entire action "so long as a motion for class certification has been made and not ruled on, unless . . . the movant has been dilatory." *Id*. at 546-47. Thus, the timing of when the named plaintiffs' claims become moot vis-à-vis the filing of a motion for class certification is important.

Defendants argue that the Plaintiffs' claims were all moot by November 2022, six months before Plaintiffs filed their Motion for Class Certification in May 2023. Defendants submit an affidavit from Elizabeth Lithila ("Lithila") [Dkt. No. 39-1] to support this timeline. Plaintiffs contend that it was not until May 2023 that the last of the Plaintiffs' claim became moot, after Plaintiffs filed their Motion for Class Certification. Plaintiffs also allege

that the parties were not able to come to an agreement that the outstanding invoices were paid until mid-June 2023.

### A. Motion to Strike

Before deciding on the Motion to Intervene, the Court must decide Plaintiff's Motion to Strike Lithila's affidavit, as this concerns the timeline of when the claims became moot. Plaintiff moved to strike the affidavit of Lithila under Rule 12(f) which permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." F. RULE. CIV. P. 12(f). Plaintiffs request the Court strike the affidavit because Defendants never disclosed Lithila in their initial Rule 26(a)(1) disclosures, nor supplemented or corrected their Rule 26(a)(1) disclosures, as required by Rule 26(e). FED. R. CIV. P. 26(e)(1)(A). Federal Rule of Civil Procedure 37 prohibits a party from using a witness to supply evidence when that witness has not been disclosed unless that failure to disclose is substantially justified or is harmless. FED. R. CIV. P. 37(c)(1).

Here, discovery has been stayed and there was no deadline by which Defendants were required to supplement disclosures. Further, Plaintiffs have not been prejudiced because of their opportunity to respond to the affidavit through a reply brief. *See Berman v. Stryker,* 2013 WL 5348324, at *2 (N.D. Ill. Sept. 24, 2013) (refusing to strike supplemental affidavit because "through

its reply, defendant has had a full opportunity to address the supplement and affidavit."); *Ballard v. Zimmer,* 2015 WL 110146, at *8 (N.D. Ill. Jan. 7, 2015) (same). Nor did Plaintiffs provide any evidence that the last of Plaintiffs' outstanding invoices had not been paid until May 2023, despite their opportunity to submit such evidence on reply. The Court accordingly denies Plaintiffs' Motion to Strike Lithila's affidavit. As a result, the Court will take at face value the timeline as stated in the affidavit, namely that all of the claims were mooted by November 2022, six (6) months before Plaintiffs filed their Motion to certify the class.

**B. Motion to Intervene and Motion for Class Certification**

Now to the merits of the Motion to Intervene. Defendants argue the action should be dismissed (and Motion to Intervene and Motion for Class Certification mooted) because Plaintiffs' claims became moot before the filing of the Motion for Class Certification. *Primax,* 324 F.3d 544 (7th Cir. 2003). The cases this Court has observed on this issue deal with defendants' offers for settlements under Federal Rule of Civil Procedure 68. Such offers are not at issue here, but the state of this law is important to review at a high level as a guide to this Court's approach.

For several years before being overruled, the Seventh Circuit in *Damasco v. Clearwire Corp.* held that Defendants' mere offers to settle mooted Plaintiffs' claims by stripping the Court of

Article III jurisdiction, unless there was a pending Motion for Class Certification. 662 F.3d 891 (7th Cir. 2011). It also held that merely filing a class action complaint would not suffice to keep the case in federal court if the plaintiffs had not also already filed a motion for class certification. *Id.* at 896. The *Damasco* Court acknowledged that defendants buying off plaintiffs' claims by making these settlement offers before plaintiffs filed a class certification motion was a risk, but that it ultimately did not want to "forge a new rule that runs afoul of Article III." *Id.* at 895. The court offered "[a] simple solution to the buy-off problem . . .: Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." *Id.*

After *Damasco,* it became "common practice" for plaintiffs to file a "placeholder" motion to certify a class to protect the putative class from attempts to buy off the named plaintiff(s). *Fauley v. Royal Canin U.S.A., Inc.,* 143 F.Supp. 3d 763, 764 (N.D. Ill. 2016). This changed after the Seventh Circuit in *Chapman v. First Index, Inc.* overruled *Damasco* "to the extent [it held] that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy." 796 F.3d 783, 787 (7th Cir. 2015). The Court reasoned that a "fleeting

offer could not reasonably be equated to full compensation." *Id.* at 788. The Supreme Court confirmed *Chapman*'s holding in *Campbell-Ewald v. Gomez,* 136 S.Ct. 663 (2016). *Chapman* thus presumably left intact *Damasco*'s holding that "[t]o allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III." *Damasco,* 662 F.3d at 896.

The "buy-off" concern is worth addressing here. As Plaintiffs note, this very case is a byproduct of the defendants mooting plaintiffs' claims in the *Daly* case. Courts in the Supreme Court and the Seventh Circuit do caution against authorizing defendants' tactical maneuvers to buy off plaintiffs. *See, e.g., Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 339 (noting defendants' "picking off" of plaintiffs' claims, "before an affirmative ruling on class certification" [] "would frustrate the objectives of class actions" and "invite waste of judicial resources by stimulating successive suits"); *see also Primax,* 324 F.3d at 547. And while Defendants' payments of the outstanding claims are admittedly more difficult to label a "tactical maneuver" as they were acting according to their authorized agency responsibilities, the

payments raise the same delay and efficiency concerns against which courts have cautioned.

Yet despite this buy-off concern, the Court cannot find a way in which Plaintiffs avoid the pitfalls of mootness under *Primax*. Defendants' payments of the outstanding balances moot Plaintiffs' claims by extinguishing their injuries required for standing. This Court adopts Judge Chang's conclusion in *Daly* that Plaintiffs' standing rests on the injury of the outstanding balances on their accounts at the nursing homes. *Daly v. Eagleson,* 2021 WL 4439428 at *3 (N.D. Ill. Sept. 27, 2021) (Chang, J.) (finding plaintiffs' injuries for standing resulting from the rejected MEDI admissions to be the collections proceedings and bills for uncovered care). Thus, without outstanding balances, Plaintiffs' injuries-in-fact required for standing are extinguished and the claims become moot. *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980) (action becomes moot unless standing continues to exist at every stage of review). Unlike settlement offers at the center of cases like *Chapman,* Plaintiffs here were not afforded the opportunity to wait on or "reject" Defendants payment of their outstanding balances at their nursing homes. The payments outright moot Plaintiffs claims.

The Court understands Plaintiffs to be requesting in part that the Court find the claims did not become moot until Plaintiffs

were able to confirm the payments with each nursing home. Unfortunately, the Court does not see how Plaintiffs' confirmation could change the fact that as of November 2022 when the final payment was made, Plaintiffs no longer had outstanding invoices, and thus no longer had standing.

Plaintiffs also cite to *Parks v. Pavkovic* for the proposition that until Defendants "communicate" the mootness to Plaintiffs, the claims are not moot. 753 F.2d 1397, 1403-1404 (7th Cir. 1985). But the point the Court made in *Parks* was that a party cannot "secretly conclude[]" to settle or moot the claims. *Id.* at 1404. There, the State gave no indication that it was agreeing to pay plaintiffs' claims. Here, Defendants took specific action that mooted the claims. Plaintiffs also cite to the Fifth Circuit (though to no specific Fifth Circuit case) for the proposition that merely filing a class action complaint should suffice to preserve potential class members' claims even if a motion for class certification has not yet been filed. Unfortunately, the part of *Damasco*'s holding left untouched by *Chapman* explicitly prohibits this. *Damasco,* 662 F.3d at 896 ("That the complaint identifies the suit as a class action is not enough by itself to keep the case in federal court.")

What does this mean for Plaintiffs going forward should they decide to file another suit? This Court is hesitant to breathe

life into the *Damasco* "placeholder" motion solution in light of the fact that Courts have considerably walked back from this tactic after *Campbell*. In fact, the Court has not found a single case that has held that *Damasco*'s recommended placeholder motion strategy survives and is necessary after *Chapman*. Rather, to the extent that placeholder motions are permissible, they are "discouraged as they come with administrative costs and create an unhelpful drag on efficiency and judicial economy." *Fauley v. Drug Depot, Inc.*, 2016 WL 17309, at *2 (N.D. Ill. Aug. 16, 2016). But *Damasco*'s placeholder solution has not technically been overruled, and the context in which it has been walked back has been in relation to Rule 68 offers for settlement. Because the same buy-off concern that animated *Damasco*'s initial placeholder suggestion is also at issue here, the Court finds it appropriate to reinstate this suggestion.

Plaintiffs' proposed solution was to file each plaintiff under "John Doe" status to ensure Defendants cannot moot their claims. Though not necessary to decide this request now, the Court will note the lack of authority cited in support of using a John Doe pseudonym under circumstances such as these. It will also underscore the impracticality concerns Defendants raised that arise from this degree of shielding the case from Defendants.

### III.  CONCLUSION

For the reasons stated herein the Court denies Plaintiffs' Motion to Strike Lithila's affidavit.  Named Plaintiffs' claims were moot as of November 2022, six (6) months before Named Plaintiffs filed a Motion for Class Certification.  Under *Primax,* the potential class members' claims were thus not preserved and Plaintiffs' Motion for Class Certification and Unnamed Putative Class Members' Motion to Intervene are dismissed as moot. 324 F.3d 544, 546-47 (7th Cir. 2003).  The case is dismissed without prejudice.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Harry D. Leinenweber
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: 8/29/2023